**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3033-16T4

120 MINUE STREET, LLC,

    Plaintiff-Respondent,

v.

110 MINUE STREET, LLC, and
HAMPSHIRE REAL ESTATE
COMPANIES,

    Defendants/Third-Party
    Plaintiffs-Appellants,

v.

AMQUIP CORPORATION,

    Third-Party Defendant,

and

SBA TOWERS V, LLC,

    Third-Party Defendant-
    Respondent.

Argued September 13, 2018 – Decided  November 29, 2018

Before Judges Alvarez, Nugent, and Reisner.

On appeal from Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000218-15.

David O. Marcus argued the cause for appellants (Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, attorneys; Robert P. Shapiro and David O. Marcus, of counsel and on the brief).

Michael E. Holzapfel argued the cause for respondent 120 Minue Street (Becker LLC, attorneys; Michael E. Holzapfel, on the brief).

Richard C. Bryan argued the cause for respondent SBA Towers V, LLC (Cipriani & Werner, PC, attorneys; Richard C. Bryan, on the brief).

PER CURIAM

Defendants 110 Minue Street, LLC, and Hampshire Real Estate Companies, appeal the January 23, 2017 grant of summary judgment to plaintiff 120 Minue Street, LLC. The claims against third-party defendant SBA Towers V, LLC, were also dismissed, as were defendants' counterclaims and cross-motions for summary judgment. We affirm for the reasons stated in Judge Frank M. Ciuffani's cogent and thorough written decision.

By way of background, in 1991 Bagcraft Corporation subdivided a several acre parcel into two lots, identified on the Borough of Carteret's tax map as Lots 1.01 and 1.02. Lot 1.02, although it has 165 feet of frontage on Minue Street,

2

has no direct access to any road. The frontage consists of a seven to twelve-foot slope transversed by several key utility lines and cables, including a thirty-inch high pressure natural gas pipe. In 1994, Bagcraft sold Lot 1.01 to Florence Paper Corporation reserving a thirty-foot easement across Lot 1.01 for street access for Lot 1.02. The contract described the easement as "temporary," however, the relevant language included the following:

> In the event [Bagcraft] is unable to obtain access to [Lot 1.02] through other reasonable means at reasonable expense, [Bagcraft] shall have the right to cause the Easement to become permanent by filing the of an election with the Middlesex County Recorder . . . and [Bagcraft] shall, at its sole expense, construct on the south side of the existing building located on the Land, a number of parking spaces equal to the number of parking spaces consumed by the permanent Easement. . . . Upon [Bagcraft's] election to make the Easement permanent, [Bagcraft] or its assigns shall, at its sole expense, maintain the Easement . . . . Such Easement shall terminate . . . . At [Bagcraft's] option, the Easement shall be filed with the Office of the Recorder of Deeds, County of Middlesex, N.J. at any time following the execution of this Contract upon determination by [Bagcraft] that the Easement shall become permanent, and shall run with the Land.

In the "Easement Agreement" attached to the contract as an exhibit, the parties stated the easement was granted by Florence, the buyer, and that Florence intended to convey to Bagcraft "an easement appurtenant, a perpetual right-of-way . . . solely for purposes of ingress and egress to and from the land of Grantee

3

('Lot 1.02') over and across the easterly portion of land of the Grantor ('Lot 1.01')[.]"

The 1994 easement agreement included a provision that Bagcraft assume responsibility for keeping the easement in good repair, plowing snow, and maintaining adequate lighting. Additionally, Bagcraft also promised to pay 3% of the annual property tax bill for Lot 1.01 as consideration for the use of the easement. The agreement stated that the easement would "run with the land and [is] binding upon and enure[s] to the heirs[,] assigns, successors, tenants and personal representative of the parties[.]"

Florence's principals formed a limited liability company, 10 Minue Street, LLC, in order to acquire Lot 1.01. On December 8, 1994, 10 Minue Street, LLC took title to Lot 1.01 by way of deed.

Approximately three years later, Bagcraft entered into a contract with AmQuip for the sale of Lot 1.02. At the closing of that transaction, AmQuip assigned all the rights, title and interest to Joseph and Marion Wesley, who took title individually. They leased Lot 1.02 to AmQuip for the next thirteen years. On March 4, 2011, Joseph conveyed his interest in the property to Marion by way of deed. Shortly thereafter, Marion conveyed title to plaintiff, 120 Minue Street, LLC, by way of deed.

Some additional discussion of the sale to AmQuip is necessary.  The contract between Bagcraft and AmQuip included a section making the sale contingent upon AmQuip obtaining approval from the county for access from Minue Street.  The relevant language declared that if AmQuip did not notify Bagcraft within a sixty-day period of problems with obtaining approval, rescission was waived.

AmQuip applied for Carteret Zoning Board of Adjustment (Board) approval for the construction of a commercial facility and communications tower.  A site plan was prepared by AmQuip's engineer depicting the construction of a curb cut and driveway for direct access to Minue Street.  The plan also depicted the easement as an optional access point.  The Board engineer inquired whether AmQuip had an actual easement over Lot 1.01 in the event that the gas main could not be relocated.  AmQuip's engineer responded that AmQuip anticipated utilizing the current easement until the gas main was lowered. Development of the project was approved.

Because of the expense of cutting through the slope and addressing the multiple utility lines running through that area, however, AmQuip notified Florence that it wished to perfect permanent access rights by making improvements as contemplated in the easement agreement.  When the Board

engineer later met with AmQuip representatives, he advised that he believed permanent use of the easement would require an amended site plan approval—a conclusion with which AmQuip's representative disagreed. The AmQuip representative believed that since the easement was on the original plan, so long as Florence signed off, there was no need for an additional submission to the Board.

On December 8, 1998, counsel for 10 Minue Street, LLC, by now the owner of Lot 1.01, and Florence, acknowledged the existence of the easement across Lot 1.01 and AmQuip's right to make the easement permanent. He notified AmQuip's counsel in writing that 10 Minue approved AmQuip's permanent use of the easement as per the easement agreement. Florence's representative advised the Board engineer that he had approved the proposed easement, including the construction of a new parking area on the north side of the building on Lot 1.01 to replace parking spaces lost due to the use of the easement.

AmQuip submitted revised site plan drawings reflecting the improvements made to Lot 1.01 so it could permanently use the easement. On that same day, copies of the plans were forwarded to the Board's engineer and

the revisions were filed with the Freehold Soil Conservation District. The improvements were made by AmQuip over the next few months.

By June 1999, when AmQuip opened its crane facility on the premises, all the improvements were in place. In March 2000, once the communication tower was complete, Wesley leased the antenna space to various wireless carriers. The leasing was conducted with the assistance of Network Management Ltd., (Network), and Wesley and Network entered into and recorded an easement agreement to allow Network to use the easement across Lot 1.01.

The crane business remains on Lot 1.02, and the communication tower site also located there is currently leased. Police and fire personnel use and maintain facilities on the tower site.

In 2009, Florence closed the warehouse on Lot 1.01, and 10 Minue Street sold the property to defendant Hampshire, who then assigned the agreement to 110 Minue Street, LLC. 10 Minue Street did not execute an affidavit of title stating that it had sole right of possession during the sale. Hampshire, during the course of the transaction, visited the site, obtained aerial and land photographs, and reviewed at least three surveys between August and September 2012. Each survey noted that the driveway was "actively being utilized by the adjacent premises for access."

7

The initial title search did not reflect easements or restrictions of record, however, the title insurance agency informed Hampshire it would not insure easements not shown on public records. The company had access to the prior title insurance policy issued to 10 Minue Street, LLC, which expressly did not insure against "loss or damages, costs, attorney's fees or expenses that arise by reason of" the driveway across Lot 1.01.

On December 13, 2012, 10 Minue Street deeded lot 1.01 to 110 Minue Street, LLC. The deed included standard language that the transfer was subject to existing easements and "the state of facts that would be shown on a current, accurate survey[.]"

On January 16, 2013, counsel for 110 Minue Street requested that 120 Minue Street explain the legal basis for its use of the driveway. Counsel exchanged correspondence until 110 Minue Street demanded 120 Minue Street and its tenants cease using the driveway. Accordingly, 120 Minue Street filed the within complaint seeking enforcement of its easement rights. 120 Minue Street alleges that each owner in its chain of title has fulfilled its responsibilities, including payment by the owner of Lot 1.02 of three percent of the annual property tax on Lot 1.01.

By way of points on appeal, defendants contend:

I.    The Trial Court Erred in Finding that Respondent Possesses an Easement in Perpetuity Entitling it to Use the Driveway of Appellant to Access Respondent's Property.

    A.    No Factual Support for Permanent Easement By Grant or Reservation.

    B.    Evidence of Effective Zoning Approval of a Permanent Easement is Lacking.

    C.    A Finding of Intent to Grant or Reserve An Easement Over Lot 1.01 to Benefit 1.02 is Unsupported.

II.   Whether or Not Appellant is Entitled to Protection As a Bona Fide Purchaser Does Not Alter the Fact That No Easement in Favor of Respondent Exists. Notwithstanding, Appellant is a Bona Fide Purchaser Which Acquired Title Free and Clear of the Purported Interest or Existence of an Easement for the Permanent Use of the Driveway.

III.  At a Minimum, The Case Should Be Remanded for a Plenary Hearing to Resolve Disputed Factual Issues As to Whether or not a Permanent Easement Exists.

IV.   On Remand, The Trial Court Should Establish a Date By Which Plaintiff/Respondent and Third Party Defendants Should be Directed to Relinquish Possession Of the Appellant's Property and Establish the Compensation Due Appellant for the Continued Use from January, 2013 Through the Date of Vacation.

9

As the trial court found, defendants were well aware of the existence of the driveway at the time of purchase. The driveway serves as 120 Minue's only means of ingress and egress, and the AmQuip sign is permanently displayed at the driveway entrance. Defendants' surveyor noted the active use of the driveway on multiple occasions prior to closing. Defendants' title commitment and insurance policy specifically excluded this active use from coverage. This was thoroughly discussed prior to closing. Defendants were familiar with the history of the properties and the creation and use of the easement.

The judge observed that:

> under these circumstances, a reasonably prudent contract purchaser acting in good faith had a duty to go beyond a conventional title search by, for example, making a direct inquiry of AmQuip or performing an expanded name search for Bagcraft (a record owner of the 110 parcel) or Florence. Defendants do not dispute that doing either of these extremely basic things would have led to the discovery of the recorded Bagcraft-Florence contract.

Judge Ciuffani further addressed defendants' argument that even if they had engaged in such inquiries, they would have been meaningless because no actual easement existed, and the use was nothing more than a license. The judge opined that even if that were the case, when a "licensee expends substantial sums of money in pursuance of the privilege [ ] which the Wesley Interest did, having

A-3033-16T4

expended several hundred thousand dollars in improving the 110 Parcel, and such expenditures are made with the acquiescence of the licensor (also present here), the license is regarded as executed and, as such, irrevocable." Where a license is irrevocable, it is essentially an easement where the use is of that type.

Accordingly, the court held:

> The Court finds that the record does not support a finding that the property interest Plaintiff claims for its benefit is a revocable license as opposed to an easement. The intent of Bagcraft and Florence to create an easement appurtenant for the benefit of themselves and their successors and assigns (of which 10 Minue Street LLC, 110 Minue Street LLC, Plaintiff and the Wesleys all plainly qualify) is reflected in countless documents — not just the integrated Bagcraft-Florence Contract and Easement Agreement, but in multiple confirming letters exchanged between AmQuip, the [owners of Florence], and their respective attorneys thereafter.

The judge's findings are entirely supported by the record. We thus conclude that defendants' points are so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Even viewing the facts in the light most favorable to defendants, it is clear that an easement appurtenant was created by Bagcraft and Florence for their benefit, and the benefit of their successors and assigns. There are no material facts in dispute. Although we

11

review Judge Ciuffani's legal conclusions de novo, they too are entirely supported by applicable law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3033-16T4